UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11569-GAO

JENNIFER McNULTY, as Guardian ad Litem and on behalf of the minor child, J.C.,
Plaintiff,

v.

MASSACHUSETTS DEPARTMENT OF CHILDREN AND FAMILIES, CHERYL SEGURA,
BARBARA HAWKES-SULLIVAN, and BETSY PARKER
Defendants.

OPINION AND ORDER
September 30, 2014

O'TOOLE, D.J.

## I. Background

The plaintiff, Jennifer McNulty, as Guardian ad Litem on behalf of minor child J.C. brings this action against the Massachusetts Department of Children and Families ("DCF") and three of its employees, Cheryl Segura, Barbara Hawkes-Sullivan, and Betsy Parker, in their official and individual capacities. Against all defendants, the plaintiff alleges violations of 42 U.S.C. § 1983; negligence under Massachusetts General Laws Chapter 258, Section 2; negligent infliction of emotional distress; intentional infliction of emotional distress; and violations of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12165 ("Title II").

The claims arise out of the defendants' alleged failure to protect J.C. from sexual abuse at the hands of her father. In the Second Amended Complaint, the plaintiff alleges the following: Segura is a social worker employed by DCF. Hawkes-Sullivan was her supervisor at all times relevant to this action, and Parker supervised both Segura and Hawkes-Sullivan. Segura planned and arranged visitation for J.C. with the father despite forensic and Sexual Abuse Intervention Network evaluations counseling against it, as well as Segura's own filing of a mandated report

against the father for his alleged sexual abuse of J.C.'s older half sister (although the complaint also alleges that the report was later found to be unsupported); that Segura submitted a status report to the Barnstable Juvenile Court in September 2008, erroneously representing that J.C. was comfortable with her father and omitting known information, per Segura's own notes, suggestive of abuse; and that Segura submitted another status report to the Barnstable Juvenile Court in October 2008 recommending that the father receive full and permanent custody of J.C., erroneously representing results of J.C.'s forensic evaluation and omitting information that the father had failed to comply with aspects of the DCF reunification plan. Relying on Segura's representations, the court awarded custody to the father. He subsequently sexually abused and assaulted J.C., who has been returned to her previous foster home.

The defendants moved to dismiss the Second Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The plaintiff opposed the motion to dismiss.

## II.    Legal Standard

To survive a motion to dismiss a plaintiff must present facts that make his claim plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A viable complaint must be well-pled, and the facts must support logical conclusions. Specifically, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. When evaluating a motion to dismiss, this Court must take "all of the factual allegations in the complaint as true." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III.   Federal Law Claims

### A.    Count I: § 1983 Claim Against DCF and Official Capacity Defendants

---

[1] Defendants Segura, Hawkes-Sullivan, and Parker in their individual capacities moved to dismiss Counts II, III, IV, VI, and VII. (dkt. no. 40.) Defendants DCF and Segura, Hawkes-Sullivan, and Parker in their official capacities moved to dismiss Counts I, III, IV, VI and VII. (dkt. no. 42.) There was no count numbered V in the complaint.

In Count I, the plaintiff seeks monetary damages against DCF and its employees in their official capacities for alleged violations of § 1983. This claim fails because "neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). In her Opposition to the official capacity defendants' Motion to Dismiss, the plaintiff concedes this point. (Opp'n at 1 n.1 (dkt. no. 55).)

B.  Count II: § 1983 Claim Against Hawkes-Sullivan and Parker

In Count II, the plaintiff asserts her § 1983 claim against the three employee defendants in their individual capacities. As to Hawkes-Sullivan and Parker, the complaint merely points to their roles as supervisors, without alleging any facts concerning their specific conduct. Vicarious liability is not available under § 1983. Iqbal, 556 U.S. at 676 (no § 1983 recovery where plaintiff fails to "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

The only allegations related to Hawkes-Sullivan's and Parker's actions are legal conclusions, not facts: "The defendants were deliberately indifferent to or tacitly authorized the wrongful conduct . . . were deliberately indifferent to or tacitly authorized the wrongful conduct by ignoring the allegation of abuse . . . of which they were, or reasonably should have been, aware," and "[t]he supervisory individual defendants failed to provide supervision of employees within the proper standard." (Second Am. Compl. ¶¶ 31, 40 (dkt. no. 33).). These "bare assertions" are insufficient to survive a motion to dismiss. Iqbal, 556 U.S. at 680-81.

C.  Count II: § 1983 Claim Against Segura

*1. Absolute Immunity*

The individual capacity defendants assert an absolute immunity defense for "[a]ny claim

3

based on their actions in the Barnstable Juvenile Court." (Mem. in Supp. at 7 (dkt. no. 41).) This Court need not consider this argument as to Hawkes-Sullivan and Parker because, as examined above, they do not have § 1983 liability as mere supervisors. Segura has the burden of showing she is entitled to absolute immunity on this theory. Burns v. Reed, 500 U.S. 478, 486 (1991). She successfully carries that burden.

Absolute immunity has been extended beyond the judge to include public officers "intimately associated with the judicial process." Frazier v. Bailey, 957 F.2d 920, 931 n.12 (1st Cir. 1992); see also Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (the focus is on "'the nature of the function performed, not the identity of the actor who performed it.'" (quoting Forrester v. White, 484 U.S. 219, 229 (1988)). In Butz v. Economou, 438 U.S. 478 (1978), the Supreme Court identified six nonexclusive factors that are characteristic of inherently judicial functions and therefore trigger absolute rather than qualified immunity:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

Cleavinger v. Saxner, 474 U.S. 193, 202 (1985) (enumerating the Butz factors).

There does not appear to be a judicial order deciding specifically whether a DCF employee making recommendations to a juvenile court judge falls into the category of functions intimately associated with the judicial process. However, the First Circuit has found that witness testimony and guardians ad litem are protected by absolute immunity because of their association with the judicial process. Watterson v. Page, 987 F.2d 1, 7 (1st Cir. 1993) (witness testimony); Cok v. Costentino, 876 F.2d 1, 3 (1st Cir. 1989) (guardians ad litem). Similarly, other jurisdictions have found absolute immunity for probation officers preparing presentencing reports, Demoran v. Witt, 781 F.2d 155, 157-58 (9th Cir. 1985); grand jurors, Sellars v.

4

Procunier, 641 F.2d 1295, 1301 fn.11 (9th Cir. 1981) (internal citations omitted); state parole officers, id. at 1303; court-appointed psychiatrists, LaLonde v. Eissner, 539 N.E.2d 538, 541 (Mass. 1989); and social workers initiating child dependency proceedings, Meyers v. Contra Costa County Dep't of Soc. Servs., 812 F.2d 1154, 1156-57 (9th Cir. 1987).

The defendants' argument that Segura's conduct before the Barnstable Juvenile Court "falls squarely within the confines of behavior protected by absolute immunity" is convincing. (Mem. in Supp. at 7 (dkt. no. 41).) Segura's reports may have recommended actions that ultimately resulted in harm to the minor child, but in the end it was the judge who made the final decision, as the defendants point out. See Millspaugh v. County Dep't of Public Welfare, 937 F.2d 1172, 1175 (7th Cir. 1991) (determining that absolute immunity is appropriate when the alleged injury depends upon a judicial decision). Moreover, the policy justification and factors articulated in Butz counsel in favor of according the protection of absolute immunity to officials such as Segura.

Even if Segura had made grave errors in her report to the court, absolute immunity would still protect those errors unless she was acting clearly and completely outside the scope of her function. Stump v. Sparkman, 435 U.S. 349, 356-57 (1978); see also Dennis v. Sparks, 449 U.S. 24, 31 (1980) (allegations of malice or bad faith in the exercise of the officer's function do not overcome absolute immunity). The plaintiff does not allege that Segura acted outside the scope of her role as a DCF employee. Accordingly, Segura has absolute immunity from the § 1983 claim to the extent that it involves her actions in relation to proceedings in the Barnstable Juvenile Court.

### 2. Qualified Immunity

Even without absolute immunity, Segura is insulated from this § 1983 claim because of

qualified immunity. To defeat a claim of qualified immunity, the plaintiff must show that: (1) the facts alleged or shown by the plaintiff establish the violation of a constitutional right; and (2) the right was clearly established at the time of the alleged violation. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). In analyzing the second question, this Court asks whether the contours of the right were sufficiently clear so that a reasonable official would have understood that his conduct violated the plaintiff's constitutional rights. Thus, the inquiry focuses on "whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." Id.

> On the face of the complaint, the plaintiffs allege that:
>
> J.C. has been deprived by the individual defendants, under color of law, of the rights, privileges and immunities secured by the Constitution and laws of the United States, including the right to be free from intrusions into her bodily integrity and to be kept safe while in the custody and/or responsibility of defendants.

(Second Am. Compl. ¶ 41 (dkt. no. 33).). This Court is not persuaded that these allegations establish a violation of a constitutional right with the specificity required by Iqbal and Twombly. The first half of the quoted paragraph is simply "a formulaic recitation of the elements of [the] cause of action" for a § 1983 claim. Twombly, 550 U.S. at 555. The second half, "the right to be free from intrusions into her bodily integrity and to be kept safe," may be a right as against an individual assaulter, remediable by tort action or criminal prosecution, but the plaintiff has not convincingly demonstrated that it was, at the relevant time, a clearly established constitutional right as to which Segura had a corresponding obligation.

Although a constitutional right to bodily integrity is grounded in substantive due process, Cook v. Gates, 528 F.3d 42, 49 (1st Cir. 2008) (citing Washington v. Glucksberg, 521 U.S. 702, 720 (1997)), the First Circuit finds a violation of that right by an executive official only where the official's actions shock the conscience. Martinez v. Cui, 608 F.3d 54, 64 (1st Cir. 2010)

6

(citing Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998)). This Court recently refused to dismiss a § 1983 claim alleging that a state actor directly sexually abused a schoolchild and deprived her of her right to bodily integrity. Doe v. Fournier, 851 F. Supp. 2d 207, 219-20 (D. Mass. 2012). Segura is not accused of direct abuse, and allegations that her statements or omissions in the course of her official responsibilities, including reports to the juvenile court, do not come close to the conscious-shocking level of direct abuse. It is established that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 197 (1989).

Moreover, even if the Court were now to conclude that Segura's actions or omissions as alleged amounted to the violation of a constitutional, the claim would still be barred by the failure of the plaintiff to show that the right in question was clearly established at the time of the events at issue, so that Segura would or ought to have known that she was violating that right. See Maldonado, 568 F.3d at 269; Barton v. Clancy, 632 F.3d 9, 22 (1st Cir. 2011). That the putative right was not clearly established is evident from the plaintiff's inability to cite authority articulating the application of a general right to bodily integrity to the particular circumstances present in this case. In sum, the plaintiff is seeking to establish that such a right is at issue in the circumstances of this case, but the very need to do that establishes that it would not have been evident to an official in Segura's position at the relevant time. For these reasons, Segura has the benefit of qualified immunity as to the § 1983 claim.

### D. Count VII: Title II Claim

*1. Official Capacity Defendants*

Count VII seeks relief under Title II. Specifically, the plaintiff claims that the minor child

7

J.C. was a "qualified individual with a disability" who was "excluded from participation in or . . . denied the benefits of the services, programs, or activities of [DCF]" as a result "of [her] disability." 42 U.S.C. § 12132. The statute defines "qualified individual with a disability" as

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

Although DCF and the official capacity defendants assert an Eleventh Amendment defense to this claim, there is no need for the Court to reach the constitutional question. See Buchanan v. Maine, 469 F.3d 158, 172-73 (1st Cir. 2006). The question can be answered by reference to the statute.

> To establish a violation of Title II, the plaintiff must demonstrate each the following:
>
> (1) that [s]he is a qualified individual with a disability; (2) that [s]he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial . . . or discrimination was by reason of [her] disability.

Buchanan, 469 F.3d at 170-71 (quoting Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000)). Even if the pleadings supported the first two parts of the Buchanan test, there are no factual allegations to support the third part, which requires that the plaintiff establish that she was excluded from DCF, denied the benefits of DCF, or otherwise discriminated against by DCF because of her disability. Any causal link is merely presented in the complaint as a conclusory statement, void of any factual support: "[J.C.'s] discrimination by the defendants was by reason of her disability, including but not limited to her sexualized, acting-out behaviors." (Second Am. Compl. ¶ 57 (dkt. no. 33).) This is not sufficient detail to satisfy the Iqbal standard.

*2. Individual Capacity Defendants*

8

The individual capacity defendants have moved to dismiss Count VII because Title II does not provide for suits against individual defendants. Weisman v. Hill, 629 F. Supp. 2d 106, 111 (D. Mass. 2009) (interpreting Title II to cover only public entities, not individuals); Kiman v. N.H. Dept. of Corrs, 451 F.3d 274, 290 (1st Cir. 2006) (noting that multiple circuit courts have also found Title II inapplicable to individual conduct). The plaintiff does not dispute this argument, and the Court agrees.

**IV.    State Law Claims**

For the reasons set forth above, the plaintiff's claims based in federal law are all subject to dismissal. In light of this, the Court declines to exercise supplemental jurisdiction on the remaining claims under state law. Those claims will be dismissed without prejudice.

**V.    Conclusion**

For the reasons stated herein, the individual capacity defendants' Motion to Dismiss (dkt. no. 40) and the official capacity defendant's Motion to Dismiss (dkt. no. 42) is GRANTED as to Counts I, II, and VII, and those claims are DISMISSED with prejudice. The Court declines to exercise supplemental jurisdiction over Counts III, IV, and VI,[2] and those claims are DISMISSED without prejudice.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

[2] There was no count numbered V in the Complaint.